Approved: /s/
MATTHEW LAROCHE
Assistant United States Attorney

*SEP 21 2016*
*S.D. OF N.Y.*

DOC # _____

ORIGINAL

16 MAG 6013

Before:   THE HONORABLE BARBARA C. MOSES
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :   **SEALED COMPLAINT**
                                    :
                                    :   Violations of 21 U.S.C.
          - v. -                    :   § 846
                                    :
LEANDRO BIERD,                      :   COUNTY OF OFFENSE:
                                    :   BRONX
                    Defendant.      :
                                    :

- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

CHRISTOPHER COOKE, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE

1.   From at least in or about August 2016, up to and including in or about September 2016, in the Southern District of New York and elsewhere, LEANDRO BIERD, the defendant, and others known and unknown, intentionally and knowingly, did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2.   It was a part and an object of the conspiracy that LEANDRO BIERD, the defendant, and others known and unknown, would and did distribute and possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.   The controlled substance that LEANDRO BIERD, the defendant, conspired to distribute and possess with the intent to distribute was a quantity of oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and the foregoing charge are, in part, as follows:

4. I am a Task Force Officer with the DEA, and I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. During the course of this investigation, I and other law enforcement agents have spoken with a cooperating witness ("CW-1").[1] Based on my discussions with CW-1, and my discussions with other law enforcement officers involved in this investigation, I have learned, among other things, the following:

   a. In or about early August 2016, CW-1, using a cellular telephone (the "CW-Device"), was contacted by LEANDRO BIERD, the defendant, who was using a cellular telephone (the "Bierd Cellphone"). During that conversation, BIERD told CW-1, in substance and in part, that BIERD had just been released from prison and that he was engaged in narcotics trafficking.

   b. Over the next several weeks, CW-1, using the CW-1 Device, communicated with BIERD, using the Bierd Cellphone, on several occasions. During those communications, BIERD stated, in substance and in part, that he wanted to meet with CW-1 to discuss a narcotics transaction but was unable to do so because he (BIERD) was meeting with individuals from Atlanta, Georgia. CW-1 understood the individuals from Atlanta to be among those whom provide BIERD with narcotics.

---

[1] CW-1 has pled guilty to federal narcotics crimes and has been assisting law enforcement in the hopes of obtaining leniency at sentencing. Information provided by CW-1 has proven reliable and has been corroborated by, among other things, surveillance and information provided by other law enforcement sources.

2

c. On or about September 8, 2016, CW-1 met with BIERD, in the Bronx, New York. During that meeting, BIERD stated, in substance and in part, that he was going to California to pick up narcotics from a supplier and that he would bring those narcotics back to the New York City area to sell.

6. On or about September 2, 2016, a Magistrate Judge in the Southern District of New York granted an application to obtain, among other things, geolocation information for the Bierd Device (the "September 2 Order"). Based on my review of information obtained pursuant to the September 2 Order, I know, among other things, that early in the day on or about September 12, 2016, the Bierd Device was located in the Southern District of New York. Later that same day, the Bierd Device was located in the vicinity of Los Angeles, California. On or about September 13, 2016, the Bierd Device was located in the vicinity of Albuquerque, New Mexico.

7. Based on my discussion with a law enforcement officer assigned to the Albuquerque, New Mexico Amtrak Train Station ("Officer-1"), I have learned, among other things, the following:

a. On or about September 13, 2016, Officer-1 and other law enforcement officers conducted a routine check of an Amtrak train traveling from Los Angeles, California through the Albuquerque Amtrak Train Station. During that check, Officer-1 encountered an individual, later identified as LEANDRO BIERD, the defendant, who was traveling on the train with a ticket in the name of "Bierd Leandro."

b. Officer-1 asked BIERD, in substance and in part, where BIERD was traveling. BIERD responded, in substance and in part, that BIERD flew to Los Angeles, California to visit friends and that he was taking a train home.

c. Following this interaction, Officer-1 asked for permission to search a bag that BIERD had in his possession (the "Bag"), and BIERD provided verbal consent to search the Bag. During the search of the Bag, Officer-1 found, among other things, packaging that contained approximately 3,000 pills. Based on Officer-1's training and experience, Officer-1 believes that the pills are oxycodone.

8. Based on my review of records provided by Amtrak, I have learned, among other things, that on or about September

3

12, 2016, LEANDRO BIERD, the defendant, purchased a train ticket in the name of "Bierd Leandro" for travel from Los Angeles, California to Penn Station, New York, New York.

WHEREFORE, the deponent respectfully requests that LEANDRO BIERD, the defendant, be imprisoned, or bailed, as the case may be.

_____
CHRISTOPHER COOKE
Task Force Officer
Drug Enforcement Administration

Sworn to before me this
21st day of September, 2016

_____
THE HONORABLE BARBARA C. MOSES
United States Magistrate Judge
Southern District of New York

4